June 23, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1749
UNITED STATES,
Appellee,

v.

MIRNA RIVERA,
Defendant, Appellant.

No. 92-2167

UNITED STATES,
Appellant,

v.

ROBERT ADAMO,
Defendant, Appellee.

ERRATA SHEET

Please make the following corrections in the opinion in
the above case released on June 4, 1993:

Page 13, 2nd line from bottom: Insert the following
language after the word "state":

that "lack of guidance as a youth" cannot justify
departure, U.S.S.G. 5H1.12, p.s.,

Page 14, lines 4 & 5: insert the following language after
" 5K2.12" and after " 4A1.3":

,p.s.

Page 14, line 10: change the word "eight" to "nine"

Page 16, last line: change "Guideline" to "Guidelines"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1749

UNITED STATES,
Appellee,

v.

MIRNA RIVERA,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Francis J. Boyle, U.S. District Judge]

No. 92-2167
UNITED STATES,
Appellant,

v.

ROBERT ADAMO,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Breyer, Chief Judge,

Campbell and Bownes, Senior Circuit Judges.

John M. Cicilline for appellant, Mirna Rivera.

Margaret E. Curran, Assistant United States Attorney, with whom

Lincoln C. Almond, United States Attorney, and Zechariah Chafee,

Assistant United States Attorney, were on brief for appellee, the
United States of America in No. 92-1749.

Margaret E. Curran, Assistant United States Attorney, with whom

Lincoln C. Almond, United States Attorney, and Seymour Posner,

Assistant United States Attorney, were on brief for appellant, the
United States of America in No. 92-2167.
Eugene V. Mollicone with whom William A. Dimitri, Jr. and Dimitri

& Dimitri were on brief for appellee, Robert Adamo.

June 4, 1993

BREYER, Chief Judge. Each of these two appeals

concerns the district court's power to impose a sentence

that departs from the Sentencing Guidelines. The first case

involves Mirna Rivera, a single mother of three small

children. Ms. Rivera was convicted of carrying about a

pound of cocaine from New York to Providence. She appeals

her thirty-three month sentence of imprisonment. She argues

that the district court would have departed downward from

the minimum thirty-three month Guidelines prison term but

for the court's view that it lacked the legal "authority" to

depart. She says that this view is legally "incorrect," 18

U.S.C. 3742(f)(1), and she asks us to set aside her

sentence.

The second case involves a union official, Robert

Adamo, who embezzled about $100,000 from his union's Health

and Welfare Fund. The district court departed downward from

the fifteen to twenty-one month prison term that the

Guidelines themselves would have required. Instead, the

court imposed a term of probation without confinement. The

court said that it was departing downward so that Mr. Adamo

could continue to work and to make restitution to the Fund.

The Government appeals. It argues that Adamo's

circumstancesare insufficientlyunusualtowarrantthedeparture.

-4-
4

We agree with the appellants in both cases. In

our view, the district court sentencing Ms. Rivera held an

unduly narrow view of its departure powers. The district

court sentencing Mr. Adamo failed to analyze the need for

departure in the way that the law requires. We consider

both cases in this single opinion because doing so may help

to illustrate an appropriate legal analysis for

"departures." We shall first set forth our view of the

portion of the law here applicable; and we shall then apply

that law to the two appeals.

I

Departures

The basic theory of the Sentencing Guidelines is a

simple one. In order to lessen the degree to which

different judges imposed different sentences in comparable

cases, an expert Sentencing Commission would write

Guidelines, applicable to most ordinary sentencing

situations. See S. Rep. No. 225, 98th Cong., 2d Sess. 38,

51, 161 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3221,

3234, 3344. In an ordinary situation, the statutes, and the

Guidelines themselves, would require the judge to apply the

appropriate guideline -- a guideline that would normally

cabin, within fairly narrow limits, the judge's power to

-5-
5

choose the length of a prison term. 18 U.S.C.

3553(a),(b). Should the judge face a situation that was not

ordinary, the judge could depart from the Guidelines

sentence, provided that the judge then sets forth the

reasons for departure. 18 U.S.C. 3553(b),(c). A court

of appeals would review the departure for "reasonableness."

18 U.S.C. 3742. And, the Commission itself would collect

and study both the district courts' departure determinations

and the courts of appeals' decisions, thereby learning about

the Guidelines' actual workings and using that knowledge to

help revise or clarify the Guidelines for the future. See

S. Rep. No. 225, 98th Cong., 2d Sess. 80, 151, reprinted in

1984 U.S.C.C.A.N. at 3263, 3334; U.S.S.G. Ch. 1, Pt. A,

intro. comment 4(b).

This basic theory is embodied in statutory

provisions and in the Guidelines themselves. We believe it

important to refer to this theory in explaining our own view

of the legal provisions concerning departures, and of how

both district courts and courts of appeals are to apply

them.

A

The Statute

-6-
6

The Sentencing Statute itself sets forth the basic

law governing departures. It tells the sentencing court

that it

shall impose a sentence of the kind, and

within the range . . . established for
the applicable category of offense
committed by the applicable category of
defendant as set forth in the guidelines
. . . .

18 U.S.C. 3553(b) (incorporating 18 U.S.C. 3553(a)(4))

(emphasis added). The statute goes on immediately to create

an exception for departures by adding that the sentencing

court shall "impose" this Guidelines sentence

unless the court finds that there exists

an aggravating or mitigating
circumstance of a kind, or to a degree,
not adequately taken into consideration
by the Sentencing Commission in
formulating the guidelines that should
result in a sentence different from that
described.

18 U.S.C. 3553(b) (emphasis added). If the sentencing

court makes this finding and sentences "outside the

[Guidelines] range," it must

state in open court . . . the specific
reason for the imposition of a sentence
different from that described [in the
guidelines].

18 U.S.C. 3553(c). The defendant may then appeal an

upward departure, and the Government may appeal a downward

departure. 18 U.S.C. 3742(a),(b); United States v.

-7-
7

Pighetti, 898 F.2d 3, 4 (1st Cir. 1990) (beneficiary of

departure decision lacks standing "to complain that the

deviation should have been greater"). On appeal, if

the court of appeals determines that the
sentence . . . is unreasonable, . . . it

shall state specific reasons for its
conclusions and . . . set aside the
sentence and remand the case for further
sentencing proceedings with such
instructions as the court considers
appropriate.

18 U.S.C. 3742(f) (emphasis added).

The upshot, as we have said, is that in ordinary

cases the district court must apply the Guidelines. In

other cases, the court may depart provided that it gives

reasons for the departure and that the resulting sentence is

"reasonable." The statute refers to those "other cases," as

those where "there exists an aggravating or mitigating

circumstance of a kind, or to a degree, not adequately taken

into consideration by the Sentencing Commission." But, as

we shall see in a moment, in many cases this statutory

limitation, as a practical matter, will have limited impact,

because the Commission itself admits that it has not

adequately considered "unusual" cases.

B

The Guidelines

-8-
8

The Guidelines deal with departures in four basic

ways.

1. Cases Outside the "Heartland." The

Introduction to the Guidelines (which the Commission calls a

"Policy Statement") makes an important distinction between a

"heartland case" and an "unusual case." The Introduction

says that the

Commission intends the sentencing courts
to treat each guideline as carving out a
"heartland," a set of typical cases
embodying the conduct that each
guideline describes.

U.S.S.G. Ch. I, Pt. A, intro. comment. (4)(b). The

Introduction goes on to say that when

a court finds an atypical case, one to
which a particular guideline
linguistically applies, but where
conduct significantly differs from the
norm, the court may consider whether a
departure is warranted.

Id. The Introduction further adds that, with a few stated

exceptions,

the Commission does not intend to limit
the kinds of factors, whether or not
mentioned anywhere else in the
guidelines, that could constitute
grounds for departure in an unusual
case.

Id.

-9-
9

The Introduction thus makes clear that (with a few

exceptions) a case that falls outside the linguistically

applicable guideline's "heartland" is a candidate for

departure. It is, by definition, an "unusual case." And,

the sentencing court may then go on to consider, in light of

the sentencing system's purposes, see 18 U.S.C. 3553(a),

(and the Guidelines themselves) whether or not the "unusual"

features of the case justify departure.

It should now be apparent why we believe the

statutory language "adequately taken into consideration"

sometimes has little practical importance. The statute says

that the sentencing court considering a departure must ask

whether the Sentencing Commission has "adequately taken into

consideration" the aggravating or mitigating circumstance

that seems to make a case unusual. But, the Commission

itself has explicitly said that (with a few exceptions) it

did not "adequately" take unusual cases "into

consideration." Of course, deciding whether a case is

"unusual" will sometimes prove a difficult matter (in

respect to which particular facts, general experience, the

Guidelines themselves, related statutes, and the general

objectives of sentencing all may be relevant). But, once

the court, see pp. 15-17, infra, has properly determined

-10-
10

that a case is, indeed, "unusual," the case becomes a

candidate for departure, for the Commission itself has

answered the statutory "adequate consideration" question.

The initial version of the Guidelines, at the risk

of redundancy, made this fact absolutely clear. It stated:

The new sentencing statute permits
a court to depart from a guideline-
specified sentence only when it finds
"an aggravating or mitigating
circumstance . . . that was not
adequately taken into consideration by
the Sentencing Commission. . . ." Thus,

in principle, the Commission, by

specifying that it had adequately

considered a particular factor, could

prevent a court from using it as grounds

for departure. In this initial set of

guidelines, however, the Commission does

not so limit the courts' departure

powers.

U.S.S.G. Ch. I, Pt. A, intro. comment. (4)(b) (Oct. 1987)

(emphasis added) (citation omitted). In later versions of

the Guidelines, the Commission eliminated the underscored

language. But, since the "unusual case" statement (i.e.,

the statement that the "Commission does not intend to limit

the kinds of factors . . . that could constitute grounds for

departure in an unusual case") expresses the same thought,

the excision presumably reflected an intent to avoid

redundancy, not to change the meaning of the section.

Indeed, the Commission has not suggested any intent to

-11-
11

change its meaning. See U.S.S.G. App. C, amend. 307 (Nov.

1990) ("language concerning what the Commission, in

principle, might have done is deleted as unnecessary, but no

substantive change is made"). Thus, (with a few exceptions)

the law tells the judge, considering departure, to ask

basically, "Does this case fall within the 'heartland,' or

is it an unusual case?"

2. Encouraged Departures. In certain

circumstances, the Guidelines offer the district court,

which is considering whether to depart, special assistance,

by specifically encouraging departures. Part 5K lists a

host of considerations that may take a particular case

outside the "heartland" of any individual guideline and, in

doing so, may warrant a departure. See U.S.S.G. 5K2.0,

p.s. The individual guidelines do not take account, for

example, of an offender's "diminished capacity," which

circumstance, in the Commission's view would normally

warrant a downward departure. U.S.S.G. 5K2.13, p.s. Nor

do certain guidelines (say, immigration offense guidelines)

take account of, say, use of a gun, which circumstance would

remove the situation (the immigration offense) from that

guideline's "heartland" and would normally warrant an upward

departure. U.S.S.G 5K2.0, 5K2.6, p.s. Specific

-12-
12

individual guidelines may also encourage departures. The

guideline governing transportation of persons for prohibited

sexual conduct, for example, recommends a downward departure

of eight levels where the offense involves neither profit

nor force. U.S.S.G. 2G1.1, comment. (n.1). A sentencing

court facing such non-heartland circumstances can feel

confident, because of this encouragement, that a departure

would not be "unreasonable." 18 U.S.C. 3742(f).

3. Discouraged Departures. The Guidelines

sometimes discourage departures. Part 5H, for example,

lists various "specific offender" characteristics, such as

age, education, employment record, family ties and

responsibilities, mental and physical conditions, and

various good works. The Guidelines say that these features

are "not ordinarily relevant" in determining departures.

U.S.S.G. Ch. 5, Pt. H (emphasis added). The Commission

thereby recognizes that (1) the individual guidelines (with

a few exceptions) do not provide adjustments reflecting such

circumstances, yet (2) this fact alone does not make such

circumstances automatically sufficient to transform a

"heartland" case into an "unusual" case outside the

heartland.

-13-
13

At the same time, the Commission recognizes that

such circumstances could remove a case from the heartland,

but only if they are present in a manner that is unusual or

special, rather than "ordinary." See United States v.

Merritt, No. 91-1637, slip op. at 25-26 (2d Cir. Feb. 9,

1993). It may not be unusual, for example, to find that a

convicted drug offender is a single mother with family

responsibilities, but, at some point, the nature and

magnitude of family responsibilities (many children? with

handicaps? no money? no place for children to go?) may

transform the "ordinary" case of such circumstances into a

case that is not at all ordinary.

Thus, a sentencing court, considering whether or

not the presence of these "discouraged" factors warrants

departure, must ask whether the factors themselves are

present in unusual kind or degree. The Commission, in

stating that those factors do not "ordinarily" take a case

outside the heartland, discourages, but does not absolutely

forbid, their use. See, e.g., Merritt, slip op. at 25-26;

United States v. Deigert, 916 F.2d 916, 918-19 (4th Cir.

1990). But see United States v. Thomas, 930 F.2d 526, 529-

30 (7th Cir.) (forbidding departures based on family

-14-
14

responsibilities, except where probation or fines are at

issue), cert. denied, 112 S. Ct. 171 (1991).

4. Forbidden Departures. The Commission has

made several explicit exceptions to the basic principle that

a sentencing court can consider any "unusual case" (any case

outside the heartland) as a candidate for departure. The

Guidelines state that "lack of guidance as a youth" cannot

justify departure, U.S.S.G. 5H1.12, p.s., that a

sentencing court "cannot take into account as grounds for

departure" race, sex, national origin, creed, religion, and

socio-economic status. U.S.S.G. 5H1.10, p.s. The

Guidelines also state that drug or alcohol abuse is not a

reason for imposing a sentence below the Guidelines range,

U.S.S.G 5H1.4, p.s., and that personal financial

difficulties and economic pressure upon a trade or business

do not warrant a decrease in sentence. U.S.S.G. 5K2.12,

p.s.; cf. Williams v. United States, 112 S. Ct. 1112, 1117

(1992) (under U.S.S.G. 4A1.3,p.s., prior arrest record

cannot provide reliable evidence of prior criminal conduct

warranting upward departure). Thus, even if these factors

make a case "unusual," taking it outside an individual

guideline's heartland, the sentencing court is not free to

consider departing. But, with these nine exceptions, the

-15-
15

sentencing court is free to consider, in an unusual case,

whether or not the factors that make it unusual (which

remove it from the heartland) are present in sufficient kind

or degree to warrant a departure. See U.S.S.G. Ch. I, Pt.

A, intro. comment. 4(b). The court retains this freedom to

depart whether such departure is encouraged, discouraged, or

unconsidered by the Guidelines.

-16-
16

C

The Sentencing Court's Departure Decision

Given the statutory provisions, and the relevant

Guidelines statements, we suggest (but we do not require)

that, as an initial matter, a sentencing court considering

departure analyze the case along the following lines:

1) What features of this case,
potentially, take it outside the
Guidelines' "heartland" and make of it a
special, or unusual, case?

2) Has the Commission forbidden
departures based on those features?

3) If not, has the Commission encouraged
departures based on those features?

4) If not, has the Commission
discouraged departures based on those
features?

If no special features are present, or if special features

are also "forbidden" features, then the sentencing court, in

all likelihood, simply would apply the relevant guidelines.

If the special features are "encouraged" features, the court

would likely depart, sentencing in accordance with the

Guidelines' suggestions. If the special features are

"discouraged" features, the court would go on to decide

whether the case is nonetheless not "ordinary," i.e.,

whether the case differs from the ordinary case in which

those features are present. If the case is ordinary, the

-17-
17

court would not depart. If it is not ordinary, the court

would go on to consider departure.

Of course, this analysis, by itself, does not help

the district court decide what to do in situations where the

Guidelines do not expressly forbid, encourage, or

discourage, departures. The Guidelines themselves recognize

that the "[c]ircumstances that may warrant departure from

the guidelines . . . cannot, by their very nature, be

comprehensively listed and analyzed in advance." U.S.S.G.

5K2.0, p.s. When such unforeseen circumstances arise, the

district court will decide whether to depart (and, if so,

how much to depart) by examining the "unusual" nature of

these circumstances and making a judgment about what is

appropriate. The structure and theory of both relevant

individual guidelines and the Guidelines taken as a whole

may inform that judgment. The sentencing statute also lists

generally relevant sentencing factors, including the "nature

and circumstances of the offense," the "history and

characteristics of the defendant," and the basic purposes of

sentencing, namely, just punishment, deterrence,

incapacitation and rehabilitation. 18 U.S.C. 3553(a);

United States v. Merritt, slip op. at 18-19, 25-26 (citing

Daniel J. Freed, Federal Sentencing in the Wake of

-18-
18

Guidelines: Unacceptable Limits on the Discretion of

Sentencers, 101 Yale L.J. 1681, 1700, 1730-31 (1992)).

Ultimately, however, the Guidelines cannot dictate how

courts should sentence in such special, unusual or other-

than-ordinary circumstances. And, that is as it should be.

As we have said, see pp. 4-5, supra, the very theory of the

Guidelines system is that when courts, drawing upon

experience and informed judgment in such cases, decide to

depart, they will explain their departures. The courts of

appeals, and the Sentencing Commission, will examine, and

learn from, those reasons. And, the resulting knowledge

will help the Commission to change, to refine, and to

improve, the Guidelines themselves. That is the theory of

partnership that the Guidelines embody.

D

Review on Appeal

If the district court decides to depart, the

defendant may appeal (an upward departure) or the Government

may appeal (a downward departure). 18 U.S.C. 3742(a),(b);

see also United States v. Pighetti, 898 F.2d at 4. The

statute then provides the appellate court with two important

instructions. First, the court of appeals must decide if

the resulting sentence is "unreasonable, having regard for"

-19-
19

the sentencing court's reasons and the statute's general

sentencing factors. 18 U.S.C. 3742(e)(3). Second, the

court of appeals must (as it ordinarily does) give "specific

reasons" for its decision. 18 U.S.C. 3742(f)(2). These

two instructions, taken together, help assure that the

courts of appeals, with their more distant, yet broader,

perspective, will also play an important indirect (as well

as the obvious direct) role in the further development of

Guidelines. They play this "indirect role" as the

Commission examines the courts of appeals' decisions and

reacts, through revision, or reiteration, of the Guidelines.

The result is a partnership in which each partner

enjoys a different institutional strength. The district

court may best understand the relation of the Guidelines to

case-specific, detailed facts. Its experience permits it

directly to form a judgment as to when certain kinds of

circumstances seem better handled by judicial discretion and

how courts ought to exercise that discretion. At the other

end of the spectrum, the Sentencing Commission, by gathering

information produced by many individual courts, can view the

sentencing process as a whole, developing a broad

perspective on sentencing, which will help it produce more

-20-
20

consistent sentencing results among similarly situated

offenders sentenced by different courts. The courts of

appeals see sentences from an intermediate vantage point.

They devote considerable time and effort to a district

court's determination in a particular case, while, at the

same time, placing that case within a broader perspective of

sentencing law.

Recognizing this relationship, we have held that

appellate courts must recognize a degree of district court

autonomy when they review certain aspects of the departure

decision. In United States v. Diaz-Villafane, 874 F.2d 43

(1st Cir.) cert. denied, 493 U.S. 862 (1989), we pointed out

that appellate review of a decision to depart may involve

three subsidiary questions: 1) review of the departure-

related circumstances to determine "whether or not" they

"are of a kind or degree that they may appropriately be

relied upon to justify departure;" 2) review of the

evidence to see if it supports the departure-related

findings of fact; and 3) review of the "record support" for

"the direction and degree" of departure. Id. at 49. We

held that in the second, and the third, instance, an appeals

court must allow the district court a degree of "leeway."

Review of factfinding is for "clear error." Id. Review of

-21-
21

departure "direction and degree" will take place with "full

awareness of, and respect for" the sentencing court's

"superior 'feel' for the case." Id. at 50; see also Bruce M.

Selya & Matthew R. Kipp, An Examination of Emerging

Departure Jurisprudence Under the Federal Sentencing

Guidelines, 67 Notre Dame L. Rev. 1, 39-40 (1991).

We also stated, however, that in respect to the

first matter ("whether or not" the circumstances "are of a

kind or degree" to warrant a departure), our appellate

review was "essentially plenary." Diaz-Villafane 874 F.2d at

49. This phrase suggested review that provides no "leeway"

for the district court. We now consider it necessary to

elaborate our meaning and to modify, somewhat, our

application of Diaz-Villafane in later cases. See United

States v. Carr, 932 F.2d 67, 72 (1st Cir.), cert. denied,

112 S. Ct. 112 (1991); United States v. Pozzy, 902 F.2d 133,

138 (1st Cir.), cert. denied, 498 U.S. 943 (1990). (Through

circulation of a draft opinion, we have obtained approval of

all active judges for doing so. See, e.g., Trailer Marine

Transport Corp. v. Rivera Vasquez, 977 F.2d 1, 9 n. 5 (1st

Cir. 1992)). Our elaboration, and modification, consists of

distinguishing certain decisions in this category where

review should take place without "leeway," from others

-22-
22

where, despite the technically legal nature of the question,

we nonetheless should review with "full . . . respect for"

the sentencing court's "superior 'feel' for the case."

Diaz-Villafane, 874 F.2d at 50. We recognize that

application of our elaboration and modification to earlier

decided cases might have meant different results.

Plenary review is appropriate where the question

on review is simply whether or not the allegedly special

circumstances (i.e., the reasons for departure) are of the

"kind" that the Guidelines, in principle, permit the

sentencing court to consider at all. As we have previously

pointed out, departures for some reasons are "forbidden,"

see pp. 13-14, supra, and departures for certain other

reasons are "discouraged" unless the case is out of the

ordinary, see pp. 12-13, supra. Were a district court (1)

to try to depart for a "forbidden" reason, or were it (2) to

try to depart for a "discouraged" reason without recognizing

that it must explain how the case (compared to other cases

where the reason is present) is special, its departure would

not be lawful. The district court has no special expertise

in deciding whether a factor is "forbidden" or

"discouraged." Hence, there is no reason to review such a

decision with any "leeway" or "deference."

-23-
23

Plenary review is also appropriate where the

appellate court, in deciding whether the allegedly special

circumstances are of a "kind" that permits departure, will

have to perform the "quintessentially legal" function, see

Diaz-Villafane, 874 F.2d at 49, of interpreting a set of

words, those of an individual guideline, in light of their

intention or purpose, in order to identify the nature of the

guideline's "heartland" (to see if the allegedly special

circumstance falls within it). Is the "child pornography"

guideline, for example, aimed only at child pornography

consumers who are also child molesters, so that a purchaser

who is not also a molester falls outside its "heartland?"

See United States v. Studley, 907 F.2d 254, 258 (1st Cir.

1990) (the fact that recipient of child pornography was not

also a child molester does not make the case unusual nor

remove it from the heartland of the child pornography

guideline); United States v. Deane, 914 F.2d 11, 14 (1st

Cir. 1990) (following Studley). Here, again, the district

court has no special competence in performing this kind of

classical textual analysis. Hence, a reviewing court,

deciding whether the district court has "incorrectly

applied" a guideline, 18 U.S.C. 3742(f)(1); Williams v.

United States, 112 S. Ct. 1112, 1120 (1992), need not give

-24-
24

the district court's answer to a question involving this

kind of analysis any special weight.

In many other instances, not anticipated by Diaz-

Villafane, the district court's decision that circumstances

are of a "kind," or "degree," that warrant departure will

not involve a "quintessentially legal" interpretation of the

words of a guideline, but rather will amount to a judgment

about whether the given circumstances, as seen from the

district court's unique vantage point, are usual or unusual,

ordinary or not ordinary, and to what extent. A district

court may well have a special competence in making this kind

of determination, because it may have a better "feel" for

the unique circumstances of the particular case before it.

A district court is also likely to have seen more ordinary

Guidelines cases, for appellate courts hear only the

comparatively few cases that counsel believe present a

colorable appeal. See The Federal Sentencing Guidelines: A

Report on the Operations of the Guidelines System 49, 245

(December 1991) (85% of Guidelines sentences not appealed).

To ignore the district court's special competence -- about

the "ordinariness" or "unusualness" of a particular case --

would risk depriving the Sentencing Commission of an

important source of information, namely, the reactions of

-25-
25

the trial judge to the fact-specific circumstances of the

case, which reactions, reduced to written reasons for

departure, can help the Commission determine whether, and

how, Guidelines revision should take place. See p. 5,

supra; U.S.S.G. Ch.1, Pt. A intro. comment. (4)(b). Thus,

appellate courts should review the district court's

determination of "unusualness" with "full awareness of, and

respect for, the trier's superior 'feel' for the case,"

Diaz-Villafane, 874 F.2d at 50, not with the understanding

that review is "plenary." Contra United States v. Carr, 932

F.2d at 72; United States v. Pozzy, 902 F.2d at 138.

As we have said, Diaz-Villafane mandated appellate

court "respect" for sentencing court determinations of fact

and of "direction and degree." We now extend that "respect"

to sentencing court determinations of whether (and the

extent to which) given circumstances make a case "unusual"

or "not ordinary." We believe this view consistent with the

Supreme Court's recent statement that,

except to the extent specifically
directed by statute, "it is not the role
of an appellate court to substitute its
judgment for that of the sentencing
court as to the appropriateness of a
particular sentence."

Williams v. United States, 112 S. Ct. at 1121 (quoting Solem

v. Helm, 463 U.S. 277, 290 n.16 (1983)); see also Wiliam W.

-26-
26

Wilkins, Jr., Sentencing Reform and Appellate Review, 46

Wash. & Lee L. Rev. 429, 443 (1989) (it is not "appropriate

for the appellate court to simply substitute its judgment de

novo for that of the sentencing court"). Our view is also

consistent with Congress' instruction that appeals courts

"shall affirm" reasonable departures. 18 U.S.C.

3742(f)(2)-(3). And, it is consistent with appellate court

efforts generally to conduct judicial review in light of

comparative institutional competence. Cf. United States v.

Wright, 873 F.2d 437, 444 (1st Cir. 1989) (deferential

review under Guidelines where issue is "one that is founded

'on the application of the fact-finding tribunal's

experience with the mainsprings of human conduct'") (quoting

United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.),

cert. denied 469 U.S. 824 (1984)) (citation omitted);

Mayburg v. Secretary of Health & Human Servs., 740 F.2d 100,

105-07 (1st Cir. 1984); see also INS v. Cardoza-Fonseca, 480

U.S. 421, 445-48 (1987) (citing Chevron U.S.A., Inc. v.

Natural Resources Defense Council, Inc., 467 U.S. 837, 843,

n.9 (1984)).

II

Applying the Analysis

-27-
27

We now apply our "departure" analysis to the

circumstances of the two cases before us, the appeal of Ms.

Mirna Rivera, and that of Mr. Robert Adamo.

-28-
28

A

Mirna Rivera

For purposes of this appeal, we take Ms. Rivera to

have transported about one pound of cocaine, from New York

to Providence, with intent to distribute it, in violation of

21 U.S.C. 841(a)(1), (b)(1)(B). The Guidelines provide a

sentence of 33 to 41 months imprisonment for a first time

offender who has engaged in this conduct. See U.S.S.G.

2D1.1(a)(3)(c)(10) (base offense level of 24); U.S.S.G.

3B1.2(a) (reduction of 4 points for minimal

participation); U.S.S.G. Ch. 5, Pt. A (sentencing table).

Ms. Rivera argued to the district court that it should

depart downward from this Guidelines sentence for the

following reasons:

1) she has three small children, ages
three, five, and six, who need a
mother's care;

2) she lives solely on welfare,
receiving no financial aid from her
former husband;

3) she has virtually no contact with any
other family member (except for a
sister, with five children, also on
welfare);

4) she has never before engaged in any
criminal activity;
and,

-29-
29

5) she committed this single offense
because of an unwise wish to obtain
money for Christmas presents for her
children.

The district court decided not to depart. Rivera claims

that this decision reflects the court's incorrect belief

that it lacked the legal authority to depart. And, she asks

us to order a new proceeding. See United States v.

Castiello, 915 F.2d 1, 5-6 (1st Cir. 1990) (new proceeding

needed where district court wrongly thought it lacked legal

power to depart, but not where it simply chose not to

exercise this authority), cert. denied, 111 S. Ct. 787

(1991).

After reviewing the record of the sentencing

proceeding, we conclude that Rivera is correct. The

district court's analysis of the nature of its power to

depart is not consistent with the view of departures that we

set forth in this opinion. We recognize a difference

between "forbidden departures," see pp. 13-14, supra, and

"discouraged departures," see pp. 12-13, supra. And, we

believe that the district court did not realize that it had

the legal power to consider departure, where departure is

discouraged (but not forbidden), if it finds features of the

case that show it is not ordinary. See pp. 12-13, supra.

-30-
30

At the sentencing hearing, the district court

said:

With respect to Defendant's argument
that the Defendant's family situation,
economic situation, warrants a
departure, I must say that the
guidelines are drawn to apply to
everyone in exactly the same way, that
it is clear from the guidelines that the
economic situation and the family
situation of the Defendant is not a
consideration. There are those who
certainly would disagree with that, but
that is the principle that is embodied
in the guidelines. They are age blind,

they are sex blind, they are blind to

family circumstances, and can result in

their application in a certain amount of
cruelty. But, that isn't a basis for
making a departure. It's a situation

where somebody tries to draw a straight

line that applies to every situation

that can possibly arise and this Court

is without discretion to take what might

well be thought by most people, at

least, legitimate concerns into

consideration. Simply put, I can't do

that because the guidelines do not

permit me to do that. So that

Defendant's objection or request to make
a downward departure is denied . . . .

Your Counsel says that a court somewhere
observed that these guidelines are not a
straightjacket for a District Court.
Well, I don't agree with that. Here is
a circumstance where I'm satisfied that
the reason you did this was to buy toys
for your children at Christmas. It was
a serious mistake. The pre-sentence
report says this:

There is no information
suggesting that Ms. Rivera had

-31-
31

any previous participation in
a similar type criminal
activity. The Defendant's
lifestyle is not indicative of
that of a drug dealer who has
profited from ongoing criminal
activity. Rather she appears
destitute, relying on public
assistance to support herself
and her children.

. . . If I had the authority to do it, I

would not impose the sentence that I am

about to impose. I would impose a

lesser sentence because I think that
these guidelines simply are unrealistic
when applied to real life situations
like this. They may work in many

circumstances, but they certainly don't

work here.

(Emphasis added).

In these statements, the court repeatedly said

that it lacked the legal power to depart; it characterized

the case before it as different from the "many

circumstances" where the Guidelines might work; it added

that it would depart if it could; it set forth several

circumstances that might make the case a special one; and it

described as identical ("sex blind" and "blind to family

circumstances") guidelines that, in fact, differ

significantly, the former involving a "forbidden" departure,

and the latter a "discouraged" departure. Compare U.S.S.G.

5H1.10, p.s. with 5H1.6, p.s; compare also pp. 13-14,

supra with pp. 12-13, supra. Taken together, these features

-32-
32

of the case warrant a new sentencing proceeding, conducted

with the district court fully aware of its power to depart

in "unusual cases" and where family circumstances are out of

the "ordinary."

Of course, we should not (and would not) order a

new proceeding were the proceeding pointless, i.e., were

there no significant possibility that the facts and

circumstances would permit the district court lawfully to

order a departure. See United States v. Rushby, 936 F.2d

41, 42 (1st Cir. 1991). Yet, we cannot say this is so. We

have examined the case law and found several cases

permitting departure in similar, or even less sympathetic,

circumstances. See United States v. Johnson, 964 F.2d 124,

128-30 (2d Cir. 1992) (sole responsibility for raising four

children); United States v. Alba, 933 F.2d 1117, 1122 (2d

Cir. 1991) (twelve-year marriage, two children, living with

disabled, dependent father and grandmother); United States

v. Pena, 930 F.2d 1486, 1494-95 (10th Cir. 1991) (single

parent of infant and sole supporter of sixteen-year-old

daughter and daughter's infant); United States v. Big Crow,

898 F.2d 1326, 1331-32 (8th Cir. 1990) (solid family and

community ties and "consistent efforts to lead a decent life

in [the] difficult environment" of an Indian reservation).

-33-
33

See also United States v. Gaskill, No. 92-5588, slip op.(3d

Cir. April 16, 1993) (defendant's responsibilities for

mentally ill wife might justify departure).

We have also found many cases forbidding

departures for reasons related to family responsibilities,

but they seem to involve circumstances less compelling than

those before us. See United States v. Chestna, 962 F.2d

103, 107 (1st Cir.), cert. denied, 113 S. Ct. 334 (1992)

(defendant was single mother of four children); United

States v. Mogel, 956 F.2d 1555, 1565 (11th Cir.) (defendant

supported two minor children and live-in mother), cert.

denied, 113 S. Ct. 167 (1992); United States v. Cacho, 951

F.2d 308, 311 (11th Cir. 1992) (defendant had four small

children); United States v. Berlier, 948 F.2d 1093, 1096

(9th Cir. 1991) (defendant sought to keep family together);

United States v. Carr, 932 F.2d 67, 72 (1st Cir.)

(codefendants were parents of young child), cert. denied,

112 S. Ct. 112 (1991); United States v. Shoupe, 929 F.2d

116, 121 (3d Cir.) (defendant was father who regularly made

child support payments and frequently spoke with young son

living with ex-wife), cert. denied, 112 S. Ct. 382 (1991);

United States v. Brand, 907 F.2d 31, 33 (4th Cir.)

(defendant was sole custodial parent of two children), cert.

-34-
34

denied, 498 U.S. 1014 (1990); United States v. Neil, 903

F.2d 564, 566 (8th Cir. 1990) (defendant had stable family

life); United States v. Pozzy, 902 F.2d 133, 139 (1st Cir.)

(defendant pregnant and husband imprisoned), cert. denied,

498 U.S. 943 (1990); United States v. Brewer, 899 F.2d 503,

508-09 (6th Cir.) (defendant was mother of young children),

cert. denied, 498 U.S. 844 (1990).

The upshot is a difficult departure decision. On

the one hand lie a host of quite special circumstances

(though many are of the "discouraged" sort), and on the

other hand lies the simple fact that Ms. Mirna Rivera did

transport a pound of cocaine from New York to Providence.

This is the kind of case in which, if the district court

departs, its informed views as to why the case is special

would seem especially useful and would warrant appellate

court "respect." See pp. 23-24, supra.

We remand the case for further proceedings.

B

Robert Adamo

Mr. Adamo was convicted of embezzling about

$100,000 belonging to the union Health and Welfare Fund of

which he was a fiduciary, in violation of 18 U.S.C. 664.

He accepted responsibility for the crime, U.S.S.G. 3E1.1.

-35-
35

It was his first offense. The Guidelines provided a minimum

prison term of fifteen months. See U.S.S.G. 2E5.2,

2B1.1, 3B1.3 (base offense level of 4; increase of 8 points

for amount of loss; 2 level enhancement for more than

minimal planning; 2 level enhancement for fiduciary);

U.S.S.G. Ch. 5, Pt. A (sentencing table). The district

court, departing downward from the Guidelines, sentenced Mr.

Adamo to probation alone, without any imprisonment.

The court gave the following reasons for its

downward departure:

When I look at these cases of
sentencing, the first thing I ask myself
is, "What sentence would I impose if
there were no guidelines?" That's what
I did for more than 20 years. And then
I ask myself, "What's a just sentence in
these circumstances? Am I going to be
limited by these artificial guidelines
made by people who have no idea of what
kind of a case I'm going to have to
decide?" No two cases are the same. . .
.

So that's where justice is in this
case, having restitution made to this
Health & Welfare Fund. If I send this
defendant to prison I think it's
foreordained that restitution will not
be made. It may be made in some
respect, but I'm sure the defendant
would lose both his jobs and would find
it very difficult to have employment
which would allow him to make
restitution. And a time in prison would
serve no useful purpose in this case.
The only factor in sentencing which

-36-
36

would be accomplished is punishment, but
the defendant has been punished just by
being here -- just being here and what
he's gone through in the last 6 months,
and the notoriety of this. So,
imprisonment serves no useful purpose in
this case. It certainly isn't a matter
of deterrence. I'm sure the defendant
will never do anything like this again.

Here is a man who has lived an
exemplary life, he's worked two jobs to
take care of his family. His wife has
worked, and although they were making in
the range of $70,000 a year, the problem
of educating two children came up. It's
a problem that everyone faces. This is
where the error of judgment comes in.
He took this money, not out of greed,
not out of desire to own a fancy car or
a palatial home and a boat, but to
educate his children. He didn't think
about the other alternatives. His
daughter wanted to go to an expensive
private school, instead of going to a
local state school of some sort, and he
thought that's what she should have. He
didn't consider loans and other types of
programs. This money was available, he
took it -- a terrible mistake. But
that's the only mistake that he seems to
have made, and I just don't think he
should spend time in prison because of
this one mistake.

I want restitution made, so I'm
going to exercise my best judgment in
these circumstances. My best judgment
is to have as long a term of probation
as possible so that restitution can be
made with the guidance of the probation
office.

So, I'm going to depart downward
and impose a term of probation of 5
years. That's the maximum that I can

-37-
37

impose. And one of the conditions of
probation will be, and is, that the
defendant shall pay restitution in the
amount of $91,125.62 to the Health &
Welfare Fund of the Building Service
Employees International Union, AFL-CIO
Local 334.

The court's explication of its reasons is useful,

for it produces understanding and permits evaluation, both

by appellate courts and by the Commission. We nonetheless

believe the analysis does not permit the departure before

us.

First, we believe (deciding the question as a pure

matter of law, see pp. 21-22, supra) that the embezzlement

guidelines encompass, within their "heartland," embezzlement

accompanied by normal restitution needs and practicalities

(i.e., the simple facts that restitution is desirable and

that a prison term will make restitution harder to achieve).

It would seem obvious, and no one denies, that the

embezzlement guidelines are written for ordinary cases of

embezzlement, that restitution is called for in many such

cases, and that prison terms often make restitution somewhat

more difficult to achieve. Moreover, the embezzlement

guideline reflects the Commission's intent to equalize

punishments for "white collar" and "blue collar" crime. See

United States Sentencing Commission, Supplementary Report on

-38-
38

the Initial Sentencing Guidelines and Policy Statements 18

(1987); Hearings Before the Senate Comm. on the Judiciary,

100th Cong., 1st Sess. 54-55 (October 22, 1987). Yet, as

the Sixth Circuit has pointed out,

a rule permitting greater leniency in
sentencing in those cases in which
restitution is at issue and is a

meaningful possibility (i.e., generally
white collar crimes) would . . . nurture
the unfortunate practice of disparate
sentencing based on socio-economic
status, which the guidelines were
intended to supplant.

United States v. Harpst, 949 F.2d 860, 863 (6th Cir. 1991)

(citing U.S.S.G. 5H1.10, p.s. (socio-economic status not

relevant in determination of sentence)). Further, the

district court itself, stating that it did not wish "to be

limited by these artificial guidelines," and that "no two

cases are alike," seemed to disregard, rather than to deny,

the scope of the embezzlement guideline. For these reasons,

we join the Fourth and Sixth Circuits, in holding that

ordinary restitution circumstances of this sort do not fall

outside the embezzlement guideline's "heartland," and

therefore do not warrant a downward departure. See Harpst,

949 F.2d at 863; United States v. Bolden, 889 F.2d 1336,

1340 (4th Cir. 1989).

-39-
39

Second, we recognize that a special need of a

victim for restitution, and the surrounding practicalities,

might, in an unusual case, justify a departure. But, we

cannot review a district court determination to that effect

here, for the district court made no such determination.

(Although, had it done so, we would have treated its

determination with "respect." See pp. 23-24, supra.) We

mention this fact because the defendant has pointed to one

unusual feature of the case. The record before us contains

a suggestion that Mr. Adamo could keep his job (and

therefore remain able to make restitution) were his prison

term only one year, but he could not keep his job (and thus

would lose his ability to make restitution) were he

sentenced to the Guidelines prison term of one year and

three months. We can imagine an argument for departure

resting upon a strong need for restitution, an important

practical advantage to the lesser sentence, and a departure

limited to three months.

We are not urging such a departure or saying that

we would eventually find it lawful. We mention the special

circumstance to underscore the need for reasoned departure

analysis, sensitive to the way in which the Guidelines seek

to structure departure decisions and to the role that such

-40-
40

departures, and their accompanying reasons, can play in the

continued development of the Sentencing Guidelines. We have

explained why the district court's analysis, about how the

features of a case make it unusual, can help both reviewing

courts and the Commission itself. See pp. 4-5, 18-19,

supra. The district court, in Mr. Adamo's case, may wish to

conduct such an analysis in light of the special features of

the case to which the defendant has pointed.

We therefore remand this case for new sentencing

proceedings.

The sentences in both cases are vacated and the

cases are remanded to the district court for resentencing.

So ordered.

-41-
41